# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TORCUP, INC., <br>     *Plaintiff,* | CIVIL ACTION |
| v. | No. 19-1560 |
| AZTEC BOLTING SERVICES, INC., *et al.*, <br>     *Defendants.* | |

## OPINION

### I. INTRODUCTION

Currently before the Court is Defendant, Aztec Bolting Services, Inc.'s ("ABS"), Motion to Dismiss the Amended Complaint (ECF No. 18), Defendant, Christopher Earl High's ("High"), Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 19), Plaintiff's Response to Defendants' Motions (ECF No. 20), and ABS's Reply (ECF No. 22).

### II. BACKGROUND

Plaintiff initiated the instant matter by way of a Complaint filed on April 11, 2019. On May 6, 2019, Plaintiff filed its Amended Complaint, which is the subject of the Defendants' Motions to Dismiss. According to Plaintiff's Amended Complaint, High was hired by Plaintiff on May 21, 2018 as a sales representative for its Houston, Texas region. ECF No. 14 at ¶ 51. On or around February 25, 2019, Plaintiff alleges that High left Plaintiff's employ and began working for

1

ABS, a Texas corporation with its principle place of business in League City, Texas. ECF No. 14 at ¶¶ 2 and 75. ABS is both a competitor and customer of Plaintiff's. ECF No. 20 at 2-3. Plaintiff alleges that High misappropriated Plaintiff's entire customer list for the Houston, Texas area when he provided said customer list to ABS. ECF No. 14 at ¶¶ 68 and 74. Plaintiff's Amended Complaint alleges three Counts against Defendants: 1) interference with contractual relations; 2) violation of uniform trade secrets act; and 3) breach of contract (as to High, only). *Id.* at ¶¶ 79-94.

Plaintiff, in its Complaint, asserts this Court has diversity jurisdiction over the parties. *Id.* at ¶¶ 4-5. In support of its assertion that this Court has personal jurisdiction over the Defendants, and venue is appropriate in this District, Plaintiff's Complaint sets forth the following allegations:

> 1) "Plaintiff TorcUP designs, manufactures, and sells tools and accessories from its plant in Easton, Pennsylvania"; 2) "Defendant ABS is a regular customer of Plaintiff"; 3) "Defendant ABS has been a customer of [Plaintiff] for approximately twenty years"; 4) "Defendant ABS places approximately one order for tools or parts every week or two to Plaintiff TorcUP in Easton, Pennsylvania"; 5) "Defendant ABS sends regular e-mails to Plaintiff TorcUP in Easton, Pennsylvania, inquiring if it has tools or parts in stock and requesting quotations"; 6) "Defendant ABS receives quotations via e-mail from Plaintiff TorcUP in Easton, Pennsylvania"; 7) "Defendant ABS sends orders via e-mail to Plaintiff TorcUP in Easton, Pennsylvania"; 8) "Plaintiff TorcUP makes shipments of ordered parts and tools from its address in Easton, Pennsylvania, to Defendant ABS"; 9) "Defendant ABS sent payments to Plaintiff TorcUP in Easton, Pennsylvania, via check"; 10)

"Defendant ABS currently sends payments to one of Plaintiff TorcUP's bank accounts in Pennsylvania via wire transfer"; 11) "Plaintiff TorcUP receives regular phones calls in its office in Easton, Pennsylvania, from Defendant ABS employees who have questions about Plaintiff TorcUP tools"; 12) "Defendant ABS has Plaintiff TorcUP tools in its rental fleet of tools"; 13) "Defendant ABS resells tools it purchased from Plaintiff TorcUP"; 14) "Defendant ABS owner or President, as well as various employees, have been to Plaintiff TorcUP's plant in Easton, Pennsylvania, for training"; 15) "Defendant High was trained by Plaintiff TorcUP in Easton, Pennsylvania"; 16) "Defendant High signed his Employee Confidentiality and Non-Competition Agreement in Easton, Pennsylvania"; 17) "Defendant High, while employed by Plaintiff TorcUP, reported to his sales managers in Easton, Pennsylvania, via phone and e-mail on a daily basis"; 18) "Defendant High, while employed by Plaintiff TorcUP, was selling Plaintiff TorcUP's tools and accessories which sales were processed and shipped from Plaintiff TorcUP's plant in Easton, Pennsylvania"; 19) "Plaintiff TorcUP's customer list is maintained in its offices in Easton, Pennsylvania"; 20) "Plaintiff TorcUP's sales information is maintained in its offices in Easton, Pennsylvania"; 21) "Plaintiff TorcUP's finances are based in Easton, Pennsylvania"; 22) "Plaintiff TorcUP's corporate headquarters is in Easton, Pennsylvania"; 23) "Plaintiff TorcUP is being harmed in Easton, Pennsylvania, by the conduct of Defendants in stealing its customer list"; 24) "Plaintiff TorcUP ships tools and accessories to customers from Easton, Pennsylvania"; 25) "Defendants were aware that their conduct would harm Plaintiff TorcUP in Easton, Pennsylvania"; 26) "Defendants' solicitation of and sales to Plaintiff TorcUP's customers harmed Plaintiff TorcUP in Pennsylvania"; 27) "Defendant ABS was aware that Defendant High was employed by Plaintiff TorcUP"; and 28) "Defendant ABS hired Defendant High because he has access to Plaintiff TorcUP's customer list which is maintained and updated in Pennsylvania." *Id.* at ¶¶ 6-35.

## III. DISCUSSION

### A. Personal Jurisdiction

Defendants' Motions to Dismiss argue that this Court lacks personal jurisdiction over the Defendants. Because this Court did not have an evidentiary hearing, to defeat Defendants' Motions to Dismiss for lack of personal jurisdiction, Plaintiff must show a *prima facie* case that personal jurisdiction exists. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). "The plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id.* Further, Plaintiff bears the burden of demonstrating that personal jurisdiction exists in the forum. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

Per Fed. R. Civ. P 4(k), a district court analyzes personal jurisdiction based on the law of the state where it sits. *Id.* Therefore, the Pennsylvania long-arm statute must be applied. *Id.* This statute allows the Court to exercise personal jurisdiction over an individual "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Stat. and Cons. Stat. Ann. § 5322(b). Initially, in the determination of the existence of personal jurisdiction, this Court must ask whether under the Due Process Clause the defendant has "certain minimum contacts with . . . [Pennsylvania] such that

4

maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Here, Plaintiff claims this Court has specific personal jurisdiction over both ABS and High.[1] ECF No. 20 at 9.

### 1. *Traditional Specific Jurisdiction*

Courts apply a three-part test in the determination of specific jurisdiction.[2] *O'Connor*, 496 F.3d at 317. "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). A defendant purposefully avails itself of the laws and "privileges" of a forum state by "conducting activities within the forum." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). No physical entry is required, but the defendant must have "deliberate[ly] target[ed]" the forum. *Id.* "In assessing whether a commercial entity has availed itself of the

---

[1] Plaintiff, in its Response to Defendants' Motions to Dismiss, does not set forth any argument as to whether this Court has general jurisdiction over Defendants. Therefore, Plaintiff has conceded that general jurisdiction does not exist over Defendants.

[2] Generally, courts are directed to evaluate specific jurisdiction on a claim-by-claim basis. *O'Connor*, 496 F.3d at 317 n. 3. However, for "certain factually overlapping claims" courts need not evaluate specific jurisdiction on a claim-by-claim basis. *Id.* In the instant matter, Plaintiff's three causes of action are all dependent on the same set of facts and they represent "the total, compensable damages [directly] . . . suffered as a result of the principal plaintiff's injury"; therefore, the claims do not need to be analyzed separately. *Id.* (internal quotations omitted) (quoting *Scattaregia v. Wu*, 343 Pa. Super. 452, 492 A.2d 55, 553 (1985)).

5

privileges of a forum's laws, jurisdiction is proper if the defendant has taken 'action . . . purposefully directed toward the forum State.'" *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 370 (3d Cir. 2002) (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (plurality opinion of O'Connor, J.)). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (quotation marks omitted).

Second, plaintiff's claims must "arise out of or relate to" defendant's purposefully targeted activities in the forum. *See O'Connor*, 496 F.3d at 318 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). When analyzing the relatedness of purposeful contacts to the forum state, the Third Circuit Court of Appeals does not subscribe to a bright-line rule or categorical method of analysis. *Id.* at 322 ("[T]here is no 'specific rule' susceptible to mechanical application in every case."). The Third Circuit requires a causal connection between the defendant's purposeful contacts within the forum and the claims alleged. *Id.* This causal connection is "a closer and more direct causal connection than that provided by the but-for test"[3] but "somewhat looser

---

[3] *O'Connor* describes the "but-for test" in the following manner: "As the name indicates, this standard is satisfied when the plaintiff's claim would not have arisen in the absence of the defendant's contacts." 496 F.3d at 319. This standard is "relaxed" and can be "overinclusive." *Id.*

6

than the tort concept of proximate causation." *Id.* at 323. "But in the course of this necessarily fact-sensitive inquiry, the analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests. With each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations. Specific jurisdiction is the cost of enjoying the benefits." *Id.* (citations omitted). The causal connection between the defendant's purposeful forum contacts and the alleged claims must "be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *Id.*

Finally, if sufficient minimum contacts exist, jurisdiction is "presumptively constitutional." *Id.* However, the court must determine whether the exercise of specific personal jurisdiction "comport[s] with 'fair play and substantial justice.'" *Id.* at 324 (citing *Burger King*, 471 U.S. at 476). The Supreme Court provides several factors courts should consider in this reasonableness analysis: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (quotation marks omitted).

### i. *Specific Jurisdiction as to ABS*

In the instant matter, the Court finds that it lacks specific personal jurisdiction over ABS. Plaintiff contends that ABS "plac[ed] orders, attend[ed] training and later obtain[ed] [a] customer list and trade secrets held at Plaintiff's . . . Pennsylvania headquarters." These contacts with Pennsylvania, according to Plaintiff, are sufficient for this Court to establish personal jurisdiction over ABS. ECF No. 20 at 10-11. Assuming ABS purposefully took action directed at Pennsylvania, Plaintiff's claims do not arise out of or relate to the alleged targeted actions directed at Pennsylvania. Plaintiff's claims against ABS concern the alleged misappropriation of customers based in the Houston, Texas area. ABS is a Texas corporation and High's employment with ABS only concerns Texas-based customers. The alleged damages to Plaintiff's relationships with these Texas based customers arises out of ABS's contacts with Texas, not Pennsylvania. There is nothing in the record to suggest that ABS's alleged actions directed at Pennsylvania are related to Plaintiff's allegations that ABS misappropriated its Houston based customer list.

Moreover, the training ABS received from Plaintiff in Pennsylvania and the orders ABS placed with Plaintiff in Pennsylvania are unrelated to the alleged misappropriation of Plaintiff's Houston area customer list. ABS's activities related to it being Plaintiff's customer, and receiving training from Plaintiff in

8

Pennsylvania are wholly separate and apart from the misappropriation of Plaintiff's customers. Simply put, the alleged misappropriation does not arise out of or relate to ABS's contacts in Pennsylvania. ABS's alleged inappropriate conduct is related only to its contacts in Texas and purposefully directed activities toward Texas.

Although Plaintiff alleges that the customer list was "maintained" in Pennsylvania, there is no causal link between the customer list being maintained in Pennsylvania and the alleged harm to Plaintiff in Texas, the location that was affected by the alleged misappropriation. If any damages occurred in this matter, they occurred in Texas, not Pennsylvania. The attenuated contacts that Plaintiff alleges do not show that ABS could have reasonably foresaw being called into court in Pennsylvania. Because ABS's contacts and activities within Pennsylvania afforded it little to no benefit of the Commonwealth's protections and laws, subjecting ABS to specific personal jurisdiction would violate the reciprocity principles that the Third Circuit abides by. In all, Plaintiff's claims do not arise out of or relate to ABS's alleged contacts with Pennsylvania, therefore, sufficient minimum contacts do not exist that allow this Court to exercise specific jurisdiction over ABS.

### ii. *Specific Jurisdiction as to High*

The Court also finds that it lacks specific jurisdiction over High. First, High did not purposefully direct any activities at Pennsylvania. Despite High working

for Plaintiff, a Pennsylvania corporation, and reporting to his managers in Pennsylvania via e-mail and telephone, his business activities for Plaintiff occurred in, and solely concerned, the Houston area. Further, there is no allegation that High resided in Pennsylvania during his employment with Plaintiff. While employed by Plaintiff, there is no allegation that High attempted to solicit clients in Pennsylvania. High received a four-day training session at Plaintiff's headquarters in Pennsylvania; that is too attenuated of a contact to establish personal jurisdiction. Moreover, Plaintiff has not shown that High's employment by a Pennsylvania corporation can, by itself, establish sufficient contacts with Pennsylvania that would allow this Court to exercise specific jurisdiction over High. Remotely working for a Pennsylvania corporation, brief check-ins with managers and human resource employees, and a four-day training in Pennsylvania are attenuated contacts that do not rise to the level of purposefully directed activities that enjoy the benefits and protections of Pennsylvania law.[4]

Assuming High has sufficient contacts with Pennsylvania, Plaintiff's claims against him do not "arise out of or relate to" his Pennsylvania contacts.

---

[4] The choice-of-law provision in High's employment contract with Plaintiff, along with the other alleged contacts, was also considered by this Court when determining "whether [High] 'purposefully invoked the benefits and protections of [Pennsylvania's] laws' for jurisdictional purposes." *Burger King*, 471 U.S. at 482 (1985). Such a choice-of-law provision, standing alone, however, will not confer jurisdiction over High. The choice-of-law provision, which states that High's Employment Agreement will be "construed and enforced under the laws of the Commonwealth of Pennsylvania," when considered with High's other alleged contacts in Pennsylvania, still does not establish that this Court has personal jurisdiction over High.

10

*O'Connor*, 496 F. 3d at 318 (quoting *Helicopteros*, 466 U.S. at 414). High's contacts with Pennsylvania are not the contacts that give rise to this litigation; instead, it is the contacts with the customer list concerning Houston area customers that gives rise to this litigation. Those contacts primarily concern Texas, not Pennsylvania. High being employed by a Pennsylvania corporation does not affect whether he misappropriated a Houston, Texas based customer list. Furthermore, the level of causation between High's contacts in Pennsylvania and Plaintiff's claims is attenuated, at best. Reporting to managers and human resources employees and attending a one-time training at Plaintiff's Pennsylvania headquarters is not related to his alleged misappropriation of a Houston based customer list and interference with contractual relationships that existed solely in the Houston area.

Plaintiff compared this Court's determination of personal jurisdiction in *Lutz v. Rakuten, Inc.*, 2019 WL 1770616 (E.D. Pa. April 22, 2019) to this case in support of this Court exercising personal jurisdiction here. In *Lutz*, defendant, Rakuten Baseball's, Pennsylvania contacts were related to plaintiff's claims. Here, Plaintiff's claims are not related to ABS's and High's contacts. For example, Rakuten Baseball purposefully availed itself of Pennsylvania by actively recruiting and continuously employing one of its residents. *Id.* at *4. These contacts were crucial to plaintiff's claims against Rakuten Baseball. In contrast, ABS and High

had attenuated and brief contacts with Pennsylvania that are not crucial to Plaintiff's claims against them.

## 2. *Personal Jurisdiction Under the Calder Effects Test*

When a defendant's contacts with a forum are insufficient under traditional specific jurisdiction, a court can exercise personal jurisdiction when an intentional tort is alleged under the test derived from *Calder v. Jones*. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260 (3d Cir. 1998). "Generally speaking, under *Calder* an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *Id.* (citations omitted). Under this test, a court can exercise personal jurisdiction over a defendant if the plaintiff shows: "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).

Although traditional specific jurisdiction and the *Calder* effects test are different, they are "cut from the same cloth." *Id.* Both require intentionality on the

part of the defendant such that they would expect to be haled to court in a given forum because of their contacts and activities in a forum. *Id.* "Only if the expressly aimed element of the effects test is met need we consider the other two elements." *Id.* (quotation marks omitted). To fulfill this element of the *Calder* effects test, the plaintiff must show that the defendant "knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 298 (quoting *IMO Indus., Inc.*, 155 F.3d at 266).

In the present case, there are no facts demonstrating that ABS or High expressly aimed their alleged tortious conduct at Pennsylvania. Plaintiff's assertion that Defendants' allegedly tortious activities in Texas harmed Plaintiff's operations in Pennsylvania is conclusory and without merit. Although the harm alleged by Plaintiff was felt by Plaintiff in Pennsylvania, the alleged conduct that led to the alleged harm was directed at Texas, not Pennsylvania. No alleged intentional tort by the Defendants was directed at Pennsylvania such that it can be said that Pennsylvania was the focal point of the harm. Further, Plaintiff's Pennsylvania customers, distributors, and operations were not affected by the alleged misappropriation of the Houston based customer list. In the two cases Plaintiff cites to support jurisdiction under the *Calder* effects test, all defendants either had sufficient contacts in the forum state or had caused significant harm in

13

the forum state through their alleged tortious conduct. There is no allegation by Plaintiff that Pennsylvania suffered any harm from Defendants' alleged intentional torts. Accordingly, this Court cannot exercise jurisdiction under the *Calder* effects test.

## B. Transfer of Action

This Court does not have personal jurisdiction over the Defendants; however, under 28 U.S.C. § 1631, if the "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought." *See also Chavez v. Dole Food Company, Inc.*, 836 F.3d 205, 224 (3d Cir. 2016) (holding that 28 U.S.C. § 1631, not 28 U.S.C. § 1406(a), governs transfers where personal jurisdiction is lacking). Although Plaintiff did not request this matter be transferred to another district if this Court found that it lacks personal jurisdiction, and because High only refers to transfer under 28 U.S.C. § 1404, the Court will *sua sponte* transfer this matter under section 1631. *See Island Insteel Systems, Inc. v. Waters*, 296 F.3d 200, 412 n. 9 (3d Cir. 2002) (allowing *sua sponte* transfer under section 1631). Here, Texas can exercise personal jurisdiction over Defendants because High is a citizen of League City, Texas and ABS is a Texas corporation with its principal place of business in League City, Texas. For

these same reasons, venue is appropriate in the Southern District of Texas. *See* 28 U.S.C. § 1391(b)(1). Further, it is in the "interest of justice" to transfer this matter to the Southern District of Texas because "principles of sounds judicial administration" direct that transfer be made to a court that has personal jurisdiction over the Defendants and where venue is proper. *Lawman Armor Corp. v. Simon*, 319 F. Supp. 2d 499, 507 (E.D. Pa. 2004). Finally, transfer is in the interest of justice because dismissal would be "time-consuming and justice-defeating," in this matter. *Id.* ("As to the interest of justice, '[n]ormally transfer will be in the interest of justice because [ ] dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" (alterations in original) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962))).

## IV. CONCLUSION

For the reasons set forth above, this Court lacks personal jurisdiction over Defendants. However, in the interest of justice, this matter will be transferred to the United States District Court for the Southern District of Texas, because that Court has personal jurisdiction and venue is proper there. An appropriate Order to follow this Opinion.

BY THE COURT:

Dated: 7-9-2019

CHAD F. KENNEY, JUDGE